In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 15-1240

KATHRYN MARCHETTI and JONATHON MARCHETTI,

*Plaintiffs-Appellants*,

*v.*

CHICAGO TITLE INSURANCE COMPANY and FIDELITY NATIONAL
TITLE INSURANCE COMPANY,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 5985 — **Sharon Johnson Coleman**, *Judge*.

———————————

ARGUED OCTOBER 28, 2015 — DECIDED JULY 12, 2016

———————————

Before WOOD, *Chief Judge*, and EASTERBROOK and
HAMILTON, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. In May 2008 Kathryn and
Jonathon Marchetti purchased a parcel of real estate in Cook
County, Illinois, for $180,000. Peotone Bank and Trust lent
them the entire price, plus $155,000 to pay for improvements
that the Marchettis planned to make. Jonathon Marchetti
acted as buyer, real-estate broker (he had a license from Illi-

nois), mortgage broker, and general contractor for the improvements. The Bank put up this $335,000 notwithstanding the fact that, three months earlier, Jonathon had been indicted for mortgage and wire fraud regarding other real-estate transactions. He pleaded guilty in August 2008.

This transaction, too, was affected by fraud, though this time Jonathon Marchetti was a victim. The parcel, which the Marchettis nominally acquired from Seville Development Corporation, actually was owned by an Illinois land trust established for the benefit of Carla Lekich. A series of sham transactions orchestrated by John Hodgman made it look as if Seville held title. In 2010 Lekich and her trust filed suit, seeking to quiet title in the parcel.

Chicago Title Insurance Company had issued a policy of title insurance, promising to indemnify the Marchettis and Peotone Bank if they suffered a loss from a problem in the title. The maximum value of the policy is $198,000. In 2010 the Bank's successors (it had syndicated the loan after making it) and Chicago Title had the property appraised. This appraisal came in at $110,000. Treating the Marchettis' promise to pay as worthless, the Lender (as we call the debt's post-syndication holders) agreed to accept $110,000 from Chicago Title as full satisfaction. Lekich's suit was settled and dismissed following this payment, plus a release of the mortgage and a disclaimer by the Marchettis of any interest in the parcel. Chicago Title became subrogated to the Marchettis' claims against their predecessors in the (fake) line of title. After Hodgman was indicted and convicted, Chicago Title was able to obtain $37,500 in restitution. (The award was greater, but only $37,500 was collectable.)

One would have thought that this brought matters to a close. Lekich held clear title to the parcel. The Marchettis no longer had the real estate—but they also no longer owed the Lender a penny. They had put nothing into the deal and got nothing out. The losers were the Lender (out of pocket about $225,000) and Chicago Title (out of pocket about $72,500). Nonetheless, the Marchettis took the offensive in this suit under the diversity jurisdiction. They contend that Chicago Title owes them $125,500—the $37,500 it collected from Hodgman, plus the $88,000 difference between the maximum value of the policy and what it paid the Lender. Section 8(b)(ii) of the policy permits the owner to elect between the property's value at the time the owner submits a claim under the policy and its value when the claim is paid. The Marchettis had the property appraised for $202,000, and they insist that the insurer thus had to disburse the policy's $198,000 maximum value—and, since it didn't, it did not acquire their rights against Hodgman. Hence the demand for $88,000 ($198,000 less the $110,000 paid to the Lender) plus the $37,500 recovered from Hodgman.

The district court was not persuaded and granted summary judgment to Chicago Title. 2015 U.S. Dist. LEXIS 4164 (N.D. Ill. Jan. 14, 2015). We're not persuaded either, and for the same reason as the district court. The Marchettis treat the policy as if it promised to pay owners the market value of the property. But that's not what it says. The property's market value matters only as one determinant of how much loss the owner suffers. The policy covers only "actual monetary loss or damage sustained or incurred by the Insured Claimant". The loss the Marchettis suffered was zero, because they had no equity interest in the property. They paid nothing for it, and the $335,000 loan substantially exceeded

the highest appraised value. (True, the Marchettis made a down payment of $3,000, but they reimbursed themselves from the loan, which covered the full purchase price.) Even an underwater property has some option value, but the Marchettis do not argue that the option value of this parcel was enough to give them a positive net interest.

Indeed, the Marchettis appear to have turned a profit on the transaction, because they did not perform all of the planned work before they gave up their claim of ownership. The Marchettis tell us that $100,000 in renovation work was done. Jonathon Marchetti was the contractor and may have profited in that capacity, and at all events $100,000 is less than the construction-loan amount of $155,000. In the district court the Marchettis contended that they lost the profits they had anticipated from renting the improved property, but they have now acknowledged that the policy does not cover consequential damages. They suffered no *capital* loss, and that is all Chicago Title promised to make good. Since Chicago Title relieved them of the burden of the loan and mortgage, leaving them loss-free, it acquired the Marchettis' claim against the fraud's perpetrator and was entitled to collect from the restitution award.

There was a loss on this transaction, but it was incurred entirely by the Lender, which put in $335,000 and got back $110,000. It is not complaining, however, about the difference between $110,000 and the policy limit of $198,000, having settled with Chicago Title. The Marchettis have no remaining liability to the Lender, which gave them a complete release as part of the settlement. Lekich and her trust did not give the Marchettis a release, but they dismissed their suit, so the Marchettis have the benefit of the judgment's preclu-

sive effect. If Lekich and the trust were to file a new suit, despite the judgment, Chicago Title might have a duty to defend, but that remote possibility cannot be the basis of the monetary relief that the Marchettis want now.

AFFIRMED